IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

      Plaintiff,

vs.                                                                                                                                             No. PO 07-1199  JB

WON KEE MIN,

      Defendant.

**MEMORANDUM OPINION AND ORDER**

      **THIS MATTER** comes before the Court on the Notice of Appeal from Denial of Motion to Reconsider Detention Hearing, filed October 24, 2007 (Doc. 22)("Notice of Appeal").  The Court held a hearing on the appeal on November 8, 2007.  The primary issue is  whether Defendant Won Kee Min is a danger to the community or poses a flight risk if the Court releases him on bond pending his trial.  Because the Court cannot say that Mr. Min poses no danger to the community and because the Court believes that Mr. Min poses a risk of flight that no set of conditions can sufficiently mitigate, the Court will deny his appeal and affirm the Magistrate Judge's detention order.

**FACTUAL BACKGROUND**

      The unclear picture of Mr. Min's status and intentions begins with his citizenship.  In the criminal complaint, the United States represents that Mr. Min alleges he is a citizen of Argentina. See United States District Court Criminal Complaint, filed Sept. 25, 2007 (Doc. 1)("Complaint"). At the November 8, 2007 hearing, counsel for Mr. Min represented to the Court that Mr. Min is a

citizen of Argentina. See Transcript of Hearing (taken Nov. 8, 2007)("Tr.") at 5:8-9 (Giovannini).[1] In the Pretrial Services' report, the United States Probation Officer stated that Mr. Min was born in Seoul, South Korea and only that he had lived in Argentina for fifteen years. See Pretrial Services Report ("PSR") ¶ 1 at 1, completed on October 4, 2007. At the hearing, the United States government questioned Mr. Min's citizenship by pointing out that his 213 form indicated that he was a citizen of South Korea and not Argentina. See Tr. at 15:23-25 (Ramirez). In response, Mr. Victor Salas of El Paso, Texas, Mr. Min's immigration attorney and expert witness on immigration issues, told the Court that Mr. Min is an Argentinian citizen. See Tr. 16:2-4 (Salas). Mr. Min also represented that he is a citizen of Argentina in his Notice of Appeal. See Notice of Appeal, at 1.

Mr. Min is lawfully married to Song Min, who is allegedly a resident alien. See Notice of Appeal, ¶ 2 at 1; Tr. at 5:11-12 (Giovannini). Mrs. Min resides in Denver, Colorado, in the family residence. See Notice of Appeal, ¶ 2 at 1. Mr. and Mrs. Min are the biological parents of four minor children who are all United States citizens. See id.

Mr. Min's father-in-law owns the Radiant Hotel on Colfax Avenue in Denver, Colorado. See id. Apparently, however, the Min family has meager assets. At the November 8, 2007 Appeal Hearing, Peter Giovannini, Mr. Min's attorney, stated: "Judge[,] even though the father-in-law does own a hotel[,] my understanding is it's called the [Radiant] Hotel in Colfax, but I'm not sure what kind of hotel that is because I'm familiar with Colfax and Colfax street has some really seed[y] areas along the way, so I don't think they have unlimited means." Tr. at 23:11-16 (Giovannini).

Mr. Min is in the United States illegally. See PSR ¶ 5, at 2. He has illegally resided in the United States for at least six years. See id. ¶ 1, at 1. The Pretrial Services Report indicates that Mr.

---

[1] The Court's citations to the transcript of the hearing refer to the Court Reporter's original, unedited version. Any final transcript may contain slightly different page and/or line numbers.

Min has moved around a lot. See id. ¶ 1, at 1.  Mr. Min indicated that, for the past year, he has lived in Seoul.  See id.  Before that stay in South Korea,  he lived in Denver, Colorado for six years, Los Angeles, California for one year, Buenos Aires, Argentina for fifteen years, and, before Argentina in Seoul.  See id.

A petition for a change in status has not been filed on Mr. Min's behalf. See Notice of Appeal ¶ 3, at 1.  Mr. Min alleges that his wife is in the process of obtaining her citizenship.  See id.  He represents to the Court that, after his wife obtains citizenship, she will petition for Mr. Min's change in status.  See id.  Mr. Min's family has consulted with Mr. Salas.  See id. ¶ 4, at 1.  Mr. Min's family plans to hire Mr. Salas to represent Mr. Min at his immigration hearing. See id.

To the Court's knowledge, Mr. Min has no current employment in, or financial ties with, the United States. See PSR ¶ 5, at 2.  Additionally, Mr. Min does not appear to be connected to any particular United States community through his employment.  See id. ¶ 2, at 2.  According to his own report, while in the United States, Mr. Min sold books for one year, worked as a cashier for seven to eight months, worked adjusting jewelry sizes for one year, sold clothes at Max Moore Store for one year, and performed construction labor, installed siding/windows, and was a tailor for an indefinite period of time. See PSR ¶ 2, at 2.

**PROCEDURAL BACKGROUND**

Mr. Min is charged with Entry Without Inspection, which is brought pursuant to 8 U.S.C. §1325(a)(1). See Notice of Appeal ¶ 1, at 1. He was brought before the United States Magistrate Judge in the District of New Mexico for an initial presentation on September 28, 2007.  See id.  The Magistrate Judge ordered his detention because of his immigration status.  See id.

Mr. Min files his appeal pursuant to 18 U.S.C. §3145.  See id. at 1.  Mr. Min argues that he is not a danger to the community, as he has no criminal history.  See id. ¶ 6, at 2. He also argues that

he is not a flight risk, because he has substantial ties to the Denver, Colorado community through his family. See id. ¶ 7, at 2.  At the Appeal Hearing, on November 8, 2007, Mr. Min's counsel represented to the Court that Mr. Min wanted to be with his family in the United States and that he planned to follow the proper steps to change his status so he could remain in the United States legally.  See Tr. at 24:13-18 (Giovannini).  Mr. Min's counsel emphasized that Mr. Min and his family wanted to "do it the right way" by completing all the proper petition steps so as not to jeopardize his chance to be with his family and continue to raise his children.  Tr. at 24:14-18 (Giovannini).

At the Appeal Hearing, Mr. Min called Mr. Salas who testified as to Mr. Min's ability to be paroled into the United States.  See Tr. at 6:6-12:10 (Court, Giovannini & Salas).  Mr. Salas testified that, if the Court were to grant Mr. Min a bond, he would not be barred from receiving a bond in immigration court.  See Tr. at 9:21-10:1 (Salas).  In response to the Court's question of what would happen to Mr. Min if he were to receive a bond from immigration court, Mr. Salas responded:

> My experience has been that in many of these situations the [ ] Department of Homeland Security would possibly allow him to remain out on a personal recognizance bond pending the criminal case, and then once the criminal case is concluded, then they would probably take him into custody and then he could seek a bond at that point.  So at this point he may or may not [be] allowed to remain free once he receives a bond in federal court.

Tr. at 10:11-18 (Salas).  Mr. Salas also testified that it was his understanding that Mrs. Min had applied to change her status from Legal Permanent Resident to Naturalized Citizen and that, although there was a tremendous backlog, she could, at this time, apply to change Mr. Min's status. See 10:19-11:5 (Giovannini & Salas).  Mr. Salas also stated that, if Mrs. Min were to become a United States citizen, there was no backlog to change the status of the spouse of a United States citizen.  See id. at 11:6-10 (Salas).

The United States opposed the appealed motion for Mr. Min to be released on bond. During the United States' cross examination of Mr. Salas, the United States pointed out that, even if the Court granted Mr. Min a bond, there was no guarantee that he would receive a bond from the immigration court and that, because Immigration and Naturalization Services had placed a detainer on him, he could be picked up by Border Patrol.

> Ramirez: . . .[A]t least at this moment in time, if he were to be [ ] released on a bond from this Court he would be because of the detain[er] Border Patrol would pick him [up] and . . .
>
> Salas: They would pick him [up] and then they would make a determination of whether they release him [on] recognizance or [ ] decide to put him at the detention center with no bond [ ] on his own recognizance [ ].
>
> Ramirez: And if they decide no bond, what happens to this case?
>     . . .
> Salas: Well, he would remain at the detention center and they would take him to court whenever he would have a hearing.
>
> Ramirez: Okay. So he would either be here or he would be there possibly detained for the resolution of this case?
>
> Salas: Unless, of course, he goes into immigration court and requests and is granted a . . . bond.

See Tr. at 14:18-15:9 (Ramirez & Salas).

The United States also emphasized that the consequences of a possible conviction in this case make Mr. Min a flight risk. See Tr. at 26:12-18 (Ramirez). The United States pointed out that, if he is convicted of the crime, he would either be detained and deported, or would have to go through the lengthy process of seeking a waiver of admission. See Tr. at 26:12-16 (Ramirez). The United States stated that Mr. Min poses a risk of nonappearance and that there is a likelihood he would "disappear off the radar" within the United States before his trial. Tr. at 26:12-24 (Ramirez).

**LAW REGARDING DISTRICT COURT REVIEW OF DETENTION ORDERS**

In <u>United States v. Cisneros</u>, 328 F.3d 610 (10th Cir. 2003), the Tenth Circuit spelled out the two avenues through which a release or detention order can be reconsidered prior to review on appeal by a court of appeals: "reconsideration under § 3142(f) and review by the presiding district judge under §§ 3145(a) and (b)." 328 F.3d at 614. Review by the presiding district judge does not require that new information be available. <u>See</u> <u>id.</u> Only new, material information justifies reconsideration under § 3142(f), and "the same judicial officer who entered the initial order" must hear the reconsideration. <u>United States v. Cisneros</u>, 328 F.3d at 614. This straightforward reading of the statute serves the salutary purpose of preventing "judge shopping" by either party and prevents

magistrate judges from being placed in the uncomfortable position of second-guessing their fellow magistrate judges, or district judges of second-guessing magistrates with information that the magistrates did not have. The Tenth Circuit also set forth factors to consider when deciding whether an individual should be released or detained:

> [I]n determining whether there are conditions of release that will reasonably assure the appearance of the person as required and the safety of any other person and the community, the judicial officer must consider:
>
> (1) The nature and circumstances of the offense charged, including whether the offense is a crime of violence or involves a narcotic drug;
>
> (2) the weight of the evidence against the person;
>
> (3) the history and characteristics of the person, including–
>
> (A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and
>
> (B) whether, at the time of the current offense or arrest, the person was on probation,

> on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and
>
> (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release.

United States v. Cisneros, 328 F.3d 610, 617 (10th Cir. 2003)(citing 18 U.S.C. § 3142(g))(internal quotation marks omitted). "If, after the hearing and consideration of the above factors, a judicial officer orders that a defendant be detained, the order must 'include written findings of fact and a written statement of the reasons for the detention.'" United States v. Cisneros, 328 F.3d at 617 (quoting 18 § 3142(i)(1)). "The standard of review for the district court's review of a magistrate judge's detention or release order under § 3145(a) is de novo." United States v. Cisneros, 328 F.3d at 616 n.1.

## ANALYSIS

Mr. Salas' testimony does not indicate clearly what will happen to Mr. Min if the Court releases him on bond. If the immigration authorities release him, he may remain in the United States without any legal status and thus be here illegally. On the other hand, the immigration authorities could deport him immediately, thus requiring him to commit another crime by failing to show up for trial; it is likely he would remain outside of the country, or return but not show up for trial. In sum, either the risk of danger to the community -- he cannot remain in the United States legally -- or the risk of nonappearance, or both, counsel that Mr. Min be detained until his trial.

**I.    THE COURT CANNOT SAY THAT MR. MIN POSES NO DANGER TO THE COMMUNITY BECAUSE HE CANNOT REMAIN IN THE UNITED STATES LEGALLY.**

The Court is aware that Mr. Min does not have an extensive criminal offense history. See PSR ¶ 4, at 2. Mr. Min's record includes only an arrest by Immigration and Naturalization Services in Denver, Colorado on February 21, 2006, for Entry Without Inspection. See PSR ¶ 4, at 2. In the

PSR, Pretrial Services represented that it is in agreement with Mr. Min that he is not a danger to the community. See Notice of Appeal ¶ 7, at 2; PSR ¶ 5, at 2.

Mr. Min's record shows that he has not been a danger to the community -- in the traditional sense -- during his time in the United States, and the Court has no reason to believe that he will pose a risk of violence or non-immigration criminal activity in the future. On the other hand, Mr. Min is charged with an immigration crime. Releasing him into the public puts him back into society without any legal status.

While Mr. Min is not a danger in the traditional sense that he may commit crimes of violence or property theft, there is a very real risk that he will remain in the United States illegally. For the Court to release Mr. Min to remain here illegally is not consistent with Congress' views on the dangers of illegal immigration. The Court cannot say that Mr. Min poses no risk of danger to the community, because he will, under the best scenario, remain in the United States illegally.

Nevertheless, the Court acknowledges that the lack of any violent or non-immigration criminal activity reduces the risk of danger to the community. The issue is whether the Court can impose conditions that reduce the risk of the danger -- illegal presence in the United States -- that he poses. The Court is not convinced that there are means for Mr. Min to stay in the United States legally and still be available for his trial.

## II.      MR. MIN PRESENTS A RISK OF NON APPEARANCE.

Although Mr. Min's family resides in the United States, the Court does not believe that his family's presence in Denver, Colorado overcomes his risk of flight. He lacks employment or financial connections to a specific United States location. Mr. Min's history of constantly moving from place to place and jumping from job to job leads the Court to believe that he would be a flight risk, because he does not have substantial ties to the community in which he would reside if he were

to be released on bond.  While Mr. Min's family resides in Denver, their presence has not prevented him from being on the road extensively over the last few years.

The Court acknowledges that Mr. Min is in a very difficult situation that does not provide him with an easy solution.  Looking at the nature and the circumstances of the situation, the Court believes that, if released on bail, Mr. Min faces three possibilities: (i) to appear at his future proceedings and run the risk of conviction and deportation; (ii) to be deported immediately before trial; or (iii) to not appear and to find a location, inside or outside the United States, in which he can be with his family now or possibly in the future. The nature and circumstance of this situation make Mr. Min a flight risk.

Mr. Min's history, character, and lack of employment and financial ties support the continued detention of Mr. Min until his trial.  Mr. Min has not followed the correct procedures to allow him to come to the United States and to be with his family legally. The Court does not have the assurance that he will follow the correct procedures for remaining legally in the United States and appear for his trial.  While the Court is sympathetic to Mr. Min's situation, it is in agreement with the United States that Mr. Min and his situation pose a risk of non appearance, and that possible release conditions do not alleviate or sufficiently mitigate that risk.  The Court, therefore, will not release Mr. Min on bond.

**IT IS ORDERED** that the Defendant's Notice of Appeal from Denial of Motion to Reconsider Detention Hearing is denied.

_____
UNITED STATES DISTRICT JUDGE

Counsel:

Larry Gomez
  Acting United States Attorney
Mark Saltzman
Elaine Ramirez
  Assistant United States Attorneys
Albuquerque, New Mexico

>*Attorneys for the Plaintiff*

Peter J. Giovannini
Las Cruces, New Mexico

>*Attorney for the Defendant*